Council, before you get going, pictures were lousy. And the case is about copying, whether one shoe looks like another. It was really strange to get lousy pictures so that we can't tell. Did anyone happen to bring the shoes? If so, we can decide among ourselves whether we want to take a look at them. I don't care about the excuse. We can get that in the argument. I just want to know if the shoes happen to be in the courtroom. Thank you, counsel. Go ahead. I'm Jerry Swan. I'm here on behalf of Adidas and I would like to reserve five minutes. In 1994, Adidas was a hot brand. Payless, consistent with its business model, knocked off the Adidas three-stripe mark with a three-stripe and a four serrated edge stripe design. Adidas sued and pursuant to a settlement agreement, Payless discontinued its activity. In 2001, Adidas continued to be a hot brand and Payless came out with four straight-edge stripes. Adidas sued again. The district court, however, granted Payless' motion for summary judgment as to straight-edge stripes. It held that in the 1994 settlement agreement, Adidas limited the reach of its three-stripe mark to a narrow set of technical parameters irrespective of confusion. The district court found that Adidas contractually surrendered for all time its right to sue Payless under the Lanham Act for a broad array of stripe arrangements that may mislead consumers. Adidas challenges the district court's reading of the 1994 settlement agreement and the resolution of this appeal begins and ends with a review of that agreement. The agreement is the first document in plaintiff appellate's excerpts of record. It is only three pages long and the panel may want to have the agreement in front of it when I briefly review its provisions. In the first two whereas clauses, the parties recap the 1994 action reciting that it involved a certain type of footwear bearing three stripes, the PSS three-stripe shoes, and certain Payless footwear bearing four parallel double serrated stripes, the PSS four-stripe shoes. In the first paragraph, Payless agreed to refrain from placing any further orders for the PSS three-stripe shoes and the PSS four-stripe shoes. In the second and third paragraphs, Payless agreed not to sell athletic shoes bearing three substantially straight parallel stripes or two or four parallel double serrated stripes of contrasting. Do I understand correctly that what the whole case is about is whether there's a negative pregnant in paragraph three that so long as the stripes are not double serrated stripes or the contrasting color running diagonally from the outsole to the lacing area, Payless can sell them? I think that's the negative pregnant the trial judge said. Correct. The judge inferred, it inferred an ongoing obligation on Adidas not to sue as to straight-edge stripes. So is there anything that we have to decide in order to decide whether the summary judgment is right other than whether paragraph three has a negative pregnant that allows Payless to make shoes with stripes that may look like Adidas shoes so long as they're not parallel double serrated and so forth? Well, I think the court would have to decide that not only was there a negative pregnant, but that pregnant overrode the dilemma. Which court are you talking about now that would have to decide? Are you saying we would have to decide or the district court would have to decide? The district court had to determine that that provision deprived Payless of the right to bring claims under likelihood of confusion under the Lanham Act. You mean Adidas? That Adidas would not have the right to assert likelihood of confusion. Adidas could not assert contract rights under the contract, but it also could not assert the Lanham Act right alleging likelihood of confusion as to other types of stripes. Let me ask you about something else that troubles me on this. We've got it on a 54B. It's properly certified 54B. We have a case called Wood that came out recently where even though it was a properly certified 54B, I think it was 54B, we turned it down because we said it's just bad judicial administration to have these things come up piecemeal. Wood versus GCC Ben. Did you have to review that? I know it's brand new. No, Your Honor. I have not reviewed that. Here, I think it's good judicial administration to only have one trial involving all the issues and that the... District courts would like to certify all questions of law, you know, when I was a district judge, before you take it to trial so you don't waste your time or the lawyer's time, but it's also the risk of the appellate court making legal errors that will be precedential that's avoided by turning down 54Bs. Your Honor, as I say, I'm not aware of the new case. And I'm sorry I'm not in a position to address Your Honor's questions about it. Why isn't this a fairly routine case that you just go to trial first? Your Honor, we felt that it should go to trial on all the issues. Why shouldn't the case go to a final judgment on all claims and all parties before it comes up on appeal? Because, Your Honor, this is a separate ruling as to a discrete body of shoes. Of all partial summary judgments. And the judgment was made final as to that claim that Adidas made in its complaint. I'm trying to see how this can be distinguished from just a routine case of a partial summary judgment. One of the facilities of a circuit court judge, it was agreed between Payless and Adidas that it would facilitate resolution of the action if this judgment could be made final and the parties could have a determination. Adidas obviously cannot settle the action with this judgment outstanding, the summary judgment outstanding. It is a critical issue to Adidas. And it is a separate issue from the other issues that are in the litigation. Was this an important lawsuit? It is an extremely important question to Adidas. Yes. It goes to the heart of Adidas' three-stripe trademark, which is at the heart of the company. I'm not telling you you have to do this. But one thing to consider is how much time you want to save for rebuttal after you find out what questions are raised with your adversaries. Yes, Your Honor. We believe that the 1994 agreement settled for all time the parties' respective rights as to two-stripe designs that were there at issue. And that's all it did. There is no covenant in the Payless agreement that gives Payless rights. All the covenants are negative covenants. They provide what Payless will not sell. There is nothing in the contract that says what Payless is permitted to sell. There is no grant of rights to Payless as to any design. There is no provision limiting all of Adidas' design rights to describe patterns. There is no provision abrogating its rights under the Lanham Act to bring apart from contract claims an action to prevent consumer confusion as to other designs. The district court nonetheless held that there was a reciprocal ongoing obligation on Adidas' part to refrain from taking legal action and granted summary judgment. And we seek reversal because that determination goes beyond the words of the contract. Counsel, when I used to write releases, typically they'd have language releasing all claims that have been or could have been brought in this action from the beginning of time to the present day. Correct. Tell me where in the excerpts and what paragraph to look at. You must have some analogous language here. The release in this action, Your Honor, is in paragraph 7. And it says it is specifically limited to the Payless 3 strike shoes and the Payless 4 strike shoes. Oh, I see. It says in paragraph 7 has brought or could have brought in this action. Yes, in this action. So what I suppose. I suppose that that does not release claims that could not have been brought because the misconduct given rise to the claims had not yet occurred. Is that right? There were no straight. There were no four strike straight edge shoes involved in the New York action. And in other words, the shoes that are at issue here are 2001 shoes. Correct. Were not identical to anything in the 94 action. No, Your Honor, they were not. They were straight edge, and that was the basis for the motion by Payless. These 2001 shoes are a different design from the previous ones? They are different strikes. They are four straight edge strikes as opposed to four double serrated edge strikes. Thank you. What's the quality of the serration? Pardon me, Your Honor? You have a serration like this, like this, like this. It's a sawtooth. How big is the serration? Your Honor, the serration is not sufficient so that it can be seen at 10 feet.  It is something that you could see at close range, but at 10 feet you could not see it. That is one of the reasons because Adidas' principal concern has always been post-sale confusion. It wouldn't settle for a- Adidas does not manufacture that type of- Pardon me, Your Honor? Adidas does not have that kind of strike on its shoes.  I see. And it has registrations, federal registrations, for both serrated edges and straight edges. The only reciprocal obligation on Adidas under the contract was its obligation to enforce the specific designs in the contract against third parties. Counsel, I'd really encourage you to save some time for rebuttal, because I have a strong hunch that everything interesting that comes up is going to come up in our colloquy with your adversary, since none of us are asking you a lot of questions. Your Honor, I will then reserve my remaining seven minutes for rebuttal. Thank you, Counsel. May it please the Court, I'm Bill Hanson for ALIS. Somehow I feel like I've been invited into the lion's den, Your Honor. Well, we were kind of a cold bench with your adversary, as this bench goes. Let me ask you a couple of questions. Certainly. I'm having all kinds of trouble with understanding the district court's decision. I look at paragraph 7 of the release, and it releases any and all claims whatsoever that Adidas has brought or could have brought in the action. And that's the 1994 action. Since these shoes that this claim is based on did not exist at that time, and no shoe of substantially similar design existed at that time, I cannot see how the release applies to these shoes. Adidas could not very well have sued in 1994 for a shoe that Payless had never made and sold. Two answers, Your Honor. In the Payless's excerpts of record, there is a 1994 complaint. Okay. Show me the page. It's a P.E.R. 10. And if you go to the request for relief that was made to the Eastern District of New York, you'll see that the request for relief wasn't limited to just the pairs of shoes, as counsel has stated, or the basis for the court's question. And I'll read. They asked that an injunction be issued in joining defendant, and then saying, from using the three-stripe device trademark or any other mark, name, or symbol confusingly similar to saying, in connection with the sale of any goods or the rendering of any services without the prior consent of Adidas. Adidas was looking for an injunction against any and all uses that were likely to cause confusion. Here's my problem with your argument, though. It's a little bit like reading what is a very backward-looking settlement. It looks to what has happened up to the date of that settlement and turning it into a forward-looking license, because basically what you're asking us to do is to read this settlement agreement as a license for you to infringe on Adidas' trade dress, so long as it's not in the two forms that you did it back in 1994. And they have for no consideration, as far as I can tell, given up the right to maintain the integrity of their trade dress or mark. I just don't get it. Well, two things on that, Your Honor. First of all, this isn't a license agreement. This is a definition of the infringing universe of stripes. That's how the case was settled. The parties who know the market in 1994, who knew the goods in 1994, who knew the stripes in 1994, decided, we don't want to go to court all the time. So what we're going to do is we're going to define what Payless cannot do. And that was done in paragraphs two and three. Now, there were no two-stripe shoes being sold in 1994, and yet Payless said we're not going to sell two-stripe shoes if they're substantially or if they're parallel and double serrated. And Adidas said sure, and they said we're not going to sell four stripes with the same double serration. Not only that, we're in paragraph two, we're going to recognize that you own the three-stripe brand, so you don't have to trouble with us anymore. I'm having trouble understanding that for two reasons. One reason is it's a negative fragment. Nowhere does this settlement agreement that you're relying on say, Payless can manufacture shoes with stripes that are like Adidas stripes in other respects. Because the agreement says Payless cannot make shoes with stripes that are like Adidas stripes in this respect, you're inferring a negative fragment that they can make shoes that are similar to Adidas shoes in other respects. The problem with that is that some negatives are not fragment. The other part that I'm having trouble with, I want you to know both hands so you can address them, is it just doesn't square with common sense to me that Adidas would say you can violate the Lanham Act any way you want in the future. You can copy our shoes just as much as you like, so long as you don't do it in this particular way that you have in the past. I can't see why people would do that. Well, I'll answer, Your Honor, the first question first. Go ahead.  And the settlement on the use of stripes is by Payless saying they won't use certain kinds of stripes. Now, this settlement agreement didn't say Adidas won. Your Honor, your question to me was as if we were talking about an injunction. Now, unless Payless has been appointed the United States issuer of shoe licenses, there's nothing that prevents the use of stripes by anybody until a court says so. Now, Adidas didn't want to go to court to the end of the day here with us. They sued us for a broad injunction. They settled. They dismissed this complaint with prejudice. The release they gave us was a release that included their claims against us. For everything that had happened up to 1994. Which included four stripes. They wanted a broad injunction, confusingly similar. That is not the phraseology taken here. There was no injunction given. The argument is as if Adidas won. Adidas didn't win. Adidas settled. The benefit of the bargain to Payless was they wouldn't haul us into court if we used four stripes or two stripes. It seems to me like the benefit of the bargain is the lawsuit ends. Well, the lawsuit ends, but the lawsuit didn't have two stripes. And we gave that up.  There were serrated stripes in the lawsuit. There weren't in the settlement. There were more. We didn't have to say you own three stripes. There's no allegation here that we used three stripes on anything. Any time you settle a trade dress copying lawsuit, you have to anticipate every kind of copying that could possibly be done in the future. And write a prohibition. Or else you're going to be stuck with a bar of just the kind of copying that you were able to think of. No, well, let's look at it the other way, Your Honor. And this is where there are myriads, there are millions of shoe designs out there. We would have to identify every one that didn't cause confusion. That's impossible. What the parties decided was we're going to identify those that we agree Payless shouldn't use. Why? It was a trademark infringement case because it created confusion. Now, when you settle trademark cases, and the Ninth Circuit has the M.W. Wire case and others on this, you settle them. You don't get to go back into court. Now, the court, the bench was asking me about trade dress. That issue is still in the case. Do our shoes copy what is called a superstar trade dress? That's still a live issue. What the benefit of the bargain is, is that unless we. What do you mean by still in the case? The trade dress issue on the superstar shoe isn't part of this summary judgment and isn't part of this appeal. It did, as it says in their arguments, and I understand from the court. The trade dress issue is still going to trial. Absolutely. This is a decision by the court that interprets an unambiguous contract that took the question of stripes between these parties out of the mix. So the trade dress issue goes to trial, but Adidas won't be allowed to prove that the stripes are part of the trade dress? No. They claim. I don't get it. What goes to trial? Well, we said if the stripes are the only thing that's in your trade dress, then it's settled. And they said, well, no, there's more. There's a toe that looks like a seashell. They call it a scout. There's a thick sole on the shoe. There's a what they call a mustache, which is this colored, different colored leather in the back of the heel. You get to go to trial on whether the shoes are a Lanham Act violation because they copy Adidas shoes. But the jury gets instructed that it cannot consider the stripes. No. As violating a trade dress. No. What they will find is, did they prove that this trade dress, that they own it, and that our shoe is likely to confuse an ordinarily prudent purchaser as to source or origin of that entire trade dress? I haven't. What's out of the case is what Judge Farnfeld is saying. What is the trademark infringement piece of it? That is out of the case. That's the use of stripes alone, without any other indicia. They don't have to prove any other claims other than the stripes. That's out of the case because we settled that with them in 1994. I'm still having trouble with just what Judge Graper identified more clearly than I have. In order for something to be out of the case, the jury is going to have to get an instruction to take it out. Because otherwise the jury is going to look at the stripes and say, geez, they're both four-stripe shoes. I don't believe so. What is the instruction? The instruction is, have they established that there is trade dress in this shoe, which includes their three-stripe design, three stripes, which includes the shell toe, which includes the thick sole, which includes perforations, which includes the heel mustache. If that whole combination of colors and designs in that shoe, does our shoe create a likelihood of confusion with it? That is what the jury would be instructed. The jury will not be asked, nor will they, of course, be instructed to find, did they do the use of four stripes on the shoe create a likelihood of confusion with the three stripes on the Adidas shoe? That's what's settled. That section, which is Section 1511.14.1 of the Lanham Act, is out. That brings us to my Rule 54B question. Why should we take an interlocutory appeal if the question of whether the shoe is a confusing copy is going to go to the jury anyway?  The stripes as part of the trade dress will. But in my understanding of looking at wood and other cases of Rule 54, neither of the parties briefed it, but I kind of had a hunch you were going to raise it. You looked at wood. I looked at wood. Tell me what applies. Yeah, I think there is not the kind of intertwining of facts. Because the trademark infringement case is different than the trade dress case. Because we say we use four stripes, they use three. Now, that's an argument we can make to the jury about likelihood of confusion in the context of the entire shoe, the purchasing experience. What is out of the case is their trademark infringement case based on our use of four stripes alone, not the trade dress. So, sure, they're going to prove up evidence of the fame of their shoe, which happens to have three stripes. But that isn't determinative of the outcome of the 43A or Section 1125 trade dress case. They have the other burden of proving that their trade dress is not functional, which isn't in the trademark infringement statute. The trademark trade dress before the court now is functional. It's got a heavy toe. It was a basketball shoe. If you've ever played basketball, you know you want a heavy toe. It's got a thick sole because it's a basketball shoe. And it's got three stripes because it holds the foot in place. Now, those are all issues that will be proven there that would not be issues in the trademark infringement case that is settled. The public policy is if you settle a trademark infringement case, let it stay settled. Management changes. Lawyers change. We will never have. Infringements change, too. Well, this circuit recognizes a way to address that. And it was never claimed here. It was never claimed below. And that's the Visa International case. If you think the public is so damaged, and I don't mean your business. If the public is so damaged, then you can attempt to rescind, reform, or void a trademark infringement case. They don't want that. Trademark settlement. They don't want that. They want the court to interpret it for them so that they can keep suing us every time they want. Every time you think up a new infringement, is there a point of view? Well, but, Your Honor, when you settle something, we said we wouldn't do it. They said we agree you can't do it. And, by the way, we're going to release you, and we are going to dismiss with prejudice. Let's say Adidas comes out with a new design shoe. It's four stripes, but they're different in some respect from all the old four-stripe shoes in 2006, in January. And Payless comes out with a four-stripe shoe that is confusingly similar to Adidas' four-stripe shoe in June of 2006. If I understand your argument right, the jury gets instructed in Adidas' case on the June 2006 infringement that the jury cannot consider the use of four stripes in itself as part of the evidence of an infringement. Now, Your Honor, what does the shoe look like? Is it white with four stripes? That's what the shoes look like. Right. There are no decent pictures in the record. But that's the hypothetical. And that's the issue here. The parties get to decide they're going to… The hypothetical is they look different from what either Adidas or Payless has made before. As long as it isn't double-serrated four stripes, as we said we wouldn't do it, then they can't sue us for stripes alone. If there are other elements in the trademark… These kinds of agreements are made to settle disputes. The universe of infringing stripes was defined. But the primary manufacturer can never imagine either all the designs it will come up with in the future or all the designs that others may come up with in the future that are similar enough to confuse the public and different enough to confuse the court. Well, then they should have gone to decision and joined us from the use of confusingly similar stripes. They didn't. They didn't want to go to court. And the benefit they got was our recognition they own three stripes, so we can't fight about that anymore, or, boy, they're going to hold us to that bargain. And we won't use two serrated stripes. Boy, they're going to hold us to that bargain. Or we won't use four serrated stripes. Boy, they're going to hold us to that bargain. But as I understand the court's question, we're still… You have to think of everything. Then we would have to think of every conceivable stripe, and we didn't. You're saying they have to think of every conceivable stripe that might be made as a confusing copy or that they might make in the future in order to have an effective settlement. Well, they got two, and that wasn't in the case. That one both parties agreed on. How about if they wanted three and a half? They could have asked for it. But the negotiations were integrated and appear in the agreement. And in the agreement is the dismissal of the underlying case that sought broad injunctive protection based on the likelihood of confusion theory. They dismissed it against us with prejudice. The release is a release of all claims that could have been brought. I guess since no one had thought of making five striped shoes, if Adidas came out with a five-stripe shoe in January 2006 and then Payless made an exact copy of it with regard to the stripes, Payless would be shielded under the settlement agreement in your view. Not from K-Swiss that owns the registration for five stripes. I don't know anything about that. Right, but that's… Another company with five stripes? Absolutely. Federal registration for five. Eight stripes. Eight stripes. Eight stripes. That's right. If you're shielded, you can copy it. Stripes on shoes were settled. They viewed what the extension or extent of their rights were. And we agreed. I have a question which is immaterial but caused by curiosity. Do Payless and Adidas farm out the manufacture of these shoes to the same overseas manufacturer? Both shoes are made… The same overseas company? They're both made outside the U.S. now. The same company? I don't believe so, Your Honor. You what? I do not believe so. I do not believe so. I know ours are made often in the Far East. So are Adidas. They're also made in Brazil sometimes. It's a curious question, isn't it? Okay. So in closing, Your Honors, the public policy here is not, as Adidas states, that this somehow is a contract that fosters confusion. This is an agreement between the trademark proprietor and someone accused of infringement that ended the question. And under the prevailing authority in this circuit and elsewhere, when part… We are over time, so wind it up. I apologize, Your Honor. I misread the clock. Everybody does that. Thank you. This used to be when they flashed that, shouldn't it? You knew it was time to go. First, to clear up a point, there broadly are two types of shoes here. There are shoes that we have sued Payless that just have four straight-edge stripes on them. Those are never going to go to a jury. Under the summary judgment, those shoes, all of those shoes, were tossed out of the case. There is one shoe that Adidas makes that, in addition to having three stripes on it, it also has a shell toe and other configurations and design features that have become famous over time. That shoe will go to the jury. But all of the other shoes, which are far and away the vast majority of the shoes that Adidas complained about below, are never going to get to the jury. They're not even going to get into the courtroom under summary judgment principles. The summary judgment destroyed your claim for all four-stripe shoes? For all four-stripe shoes. You're not allowed to go to the jury and say, Now, don't look at the stripes. Disregarding the stripes, are these shoes confusingly similar to the other shoes? Stripes are totally out of the case. I didn't ask if stripes were out of the case. I asked if four-stripe shoes were out of the case. Four-stripe shoes that are just four-stripe shoes, yes, are out of the case. You're not allowed to go to the jury with the four-stripe shoes and ask the jury whether they're confusingly similar, disregarding the stripes based on other aspects of the design. There's only one shoe that we can do that with respect to. You can't do it with respect to the four-stripe shoes. You can't do it with respect to 90% of the shoes that were at issue below it. The four-stripers? The four-stripers. You keep answering my question in different words from the way I asked it. I'm sorry, Your Honor. What I'm thinking is that they're intersecting rather than congruent sets, and that's why you're using different words. Are the four-stripe shoes out of the case or not? They're out of the case. And that's because of the stripes summary judgment? The judge below said that they had a right under the settlement agreement to make four stripes. It gave the negative framework. Now, on the three-stripe shoes, does that go to the jury with any limiting instruction about the stripes, or does it just go straight to the jury? Are they confusingly similar? There are no three-stripe shoes in the case. Adidas has a three-stripe shoe, the Superstar, that has a number of other design features, and Payless copied all the other design features and put four stripes on that shoe, and that one shoe will go to the jury. But most of Payless' shoes just have four stripes on them. So you're saying they put four stripes on a shoe that you sell a similar shoe with three stripes. Correct. And their four-stripe and your three-stripe shoe will go to the jury. No. Their four-stripe and our three-stripes will not go to the jury. The only thing that will go to the jury is our three-stripe shoe that has a lot of other features to it, a shell toe, a heel patch, a sole design, and that combination. It makes a three-stripe shoe, and that goes to the jury. If they make a three-stripe shoe, that would violate the contract. I'm getting lost again because you keep answering in different words from the way I ask it, so I'm thinking I must be wrong in my understanding. I apologize. I want to know, is anything going to the jury? If so, what? The only thing that is going to the jury is the superstar design that includes not only stripes, but a shell toe, a heel patch feature, and a flat sole. The combination will go to the jury. Nothing with just four stripes will go to the jury. And the shoes that allegedly infringe or that allegedly violate your trade dress rights in that package is about 10% of the shoes that you were suing about to start with. Correct. Okay. It's one single design. And there are a bunch of other designs that are out in the community. Most of the designs just have the four straight-edge stripes on them, and all of those are out. What about the 54B? Your Honor, it looks as though these are pretty intertwined. Or are they? There's a trade dress claim that has stripes as one of its design elements, but we could win that and still not be able to get to the jury or to argue that we're entitled to present all of these other shoes. The trademark, all of the trademark, every trademark issue in the case is thrown out because the trademark issues all related to four stripes. Those have all been removed from the case. The only thing that remains in the case is this one trade dress case that involves all of these other elements that we contend were copied, too. But I think Your Honor is exactly right. There was no way in 1994 we could sit down and think of all the ways that we might be infringed. And no party is ever in a position to do that. The determination of infringement is a seven-factor test that you don't know until you see it whether or not there's likely confusion because you have to balance all these factors. There's no way that we could have entered into a settlement of that nature with respect to the heart of our business. Thank you, counsel. Adidas America vs. Payless shoe source is submitted.
judges: Ferguson, Kleinfeld, Graber